# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| KENNETH SIMMS, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL ASTRUE, Commissioner of the )<br>Social Security Administration, )<br>      Defendant. ) | CAUSE NO.: 2:08-CV-00094-PRC |

## OPINION AND ORDER

This matter is before the Court on a Plaintiff's Motion for Attorney's Fees Under the Equal Access to Justice Act and for Entry of Final Judgement (sic) Order [DE 27], filed by Barry A. Schultz, counsel for Plaintiff Kenneth Simms, on April 28, 2009. On May 14, 2009, the Commissioner filed a response brief in opposition to Plaintiff's fee request. On May 20, 2009, Plaintiff's counsel filed a reply. For the following reasons, the Court grants the Motion.

## PROCEDURAL AND FACTUAL BACKGROUND

On January 22, 2004, Plaintiff Simms filed an application for SSI benefits, alleging a disability onset date of September 30, 2001. Plaintiff's application was originally denied on June 3, 2004, and also upon reconsideration on August 11, 2004. On September 16, 2004, Plaintiff filed a timely request for a hearing. Administrative Law Judge Shirley Michaelson ("ALJ"), held a hearing on December 27, 2005, and a supplemental hearing on November 8, 2006, issuing an unfavorable decision on December 26, 2006. Plaintiff filed a timely request for review and the Social Security Administration Appeals Council denied the request on January 25, 2008, leaving the ALJ's decision as the final decision of the Commissioner.

On March 20, 2008, Plaintiff filed a Complaint with this Court, seeking review of the Commissioner's final decision. On July 29, 2008, Plaintiff filed an opening brief, submitting the following six arguments in favor of reversal or remand: (1) the ALJ failed to consider whether Plaintiff's impairments equaled Listing 12.05; (2) the ALJ reached an erroneous RFC finding, specifically: improperly analyzing discrepancies in Dr. Smejkal's report, improperly weighing the medical source opinions, improperly rejecting Dr. Rudolph's psychological assessment, failing to recontact Dr. Rudolph and Dr. Smejkal, finding that Plaintiff's asthma was not a severe impairment and failing to consider its impact on Plaintiff's RFC, and failing to include Dr. Smejkal's assessed postural limitations in the RFC; (3) the ALJ failed to resolve apparent conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"); and (4) the ALJ failed to ask a complete hypothetical to the VE.

On January 30, 2009, the Court issued an Opinion and Order remanding this matter for further proceedings. The Court granted remand on the following issues: the ALJ's failure to properly weigh the medical source opinions, improper rejection of Dr. Rudolph's psychological assessment of Plaintiff and failure to recontact him, failure to consider the impact of Plaintiff's asthma on environmental limitations for his RFC, failure to consider all of Plaintiff's limitations in her RFC finding, failure to properly question the VE as to the consistency of his testimony with the DOT, and failure to submit a complete hypothetical to the VE.

On April 28, 2009, Plaintiff filed the instant Motion for Attorney's Fees under the Equal Access to Justice Act ("EAJA") and for Entry of Final Judgment Order. The Motion is now fully briefed and before the Court.

**ANALYSIS**

In the Motion for Attorney's Fees, Plaintiff's counsel requests an award of fees at an hourly rate of $176.25 for attorney work performed in July 2008, when, as Plaintiff's counsel represents, most of the legal work was performed in this matter, under the EAJA, representing the cost of living adjustments allowed by 28 U.S.C. § 2412(d)(2)(A)(ii) when employing the "All items" figure provided by the Consumer Price Index.[1] Plaintiff's attorney also requests an hourly rate of $85.00 for work performed by legal assistants/paralegals. Finally, Plaintiff's attorney requests compensation for the time spent preparing the instant Motion for Attorney's Fees.

In his opening Motion, counsel for Plaintiff requests attorney's fees in the amount of $9,842.37, which represents 52.7 attorney hours at the rate of $176.25 per hour (totaling approximately $9,288.37); $350.00 in costs; and 2.4 legal assistant hours worked at a rate of $85.00 (totaling $204.00). In his reply brief, Plaintiff's attorney requests an adjusted total amount of attorney's fees of $10,425.24,[2] to include 3.5 attorney hours at the rate of $176.25 for time spent preparing the reply brief.

The EAJA allows a prevailing plaintiff to recoup reasonable attorney fees incurred in litigation against the Commissioner of Social Security "unless the court finds that the position of the [Commissioner] was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *see also Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 154 (1990); *Golembiewski v. Barnhart*, 382 F.3d 721, 723-24 (7th Cir. 2004). Pursuant to 28 U.S.C. §

---

[1] Based on the time sheet submitted with Plaintiff's Motion, it appears that two attorneys performed work on behalf of Plaintiff in this case. However, only a single attorney, Barry A. Schultz, entered his appearance in this matter on Plaintiff's behalf. Thus, in this Opinion and Order, the Court refers to Plaintiff's counsel as a single attorney.

[2] As discussed below, this total reflects an adjustment subtracting .2 hours of clerical time that were improperly included in the calculation provided in the opening motion. Prior to the adjustment, the total request was $10,459.24.

3

2412(d)(1)(B), a fee application must be filed within thirty days of a court's final judgment and must satisfy the following requirements: (1) a showing that the applicant is a "prevailing party;" (2) a showing that the applicant is "eligible to receive an award;" (3) a showing of "the amount sought, including an itemized statement from any attorney or expert witness representing or appearing on behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed;" and (4) an "alleg[ation] that the position of the [Commissioner] was not substantially justified." 28 U.S.C. § 2412(d)(1)(B); *see also Scarborough v. Principi*, 541 U.S. 401, 405 (2004); *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1078-79 (7th Cir. 2000) (setting forth the elements of § 2412(d)(1)(A) & (B)).

In this case, it is uncontested that Plaintiff is the prevailing party and that he or his attorney filed the instant Motion in a timely manner. There are now two issues before this Court: (A) whether the position of the Commissioner was "substantially justified;" and (B) whether the fees requested by Plaintiff's attorney are reasonable. The Court will address the issues separately.

### A. Substantially Justified

Considering whether the Commissioner was substantially justified, the court is to analyze the "position of the [Commissioner,]" which refers to the conduct of the Commissioner throughout the civil action, including pre-litigation conduct. 28 U.S.C. § 2412(d)(2)(D); *Golembiewski*, 382 F.3d at 724; *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994). The trial court must consider whether the Commissioner's pre- and post-litigation "position was grounded in: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Golembiewski*, 382 F.3d at 724 (citing *Hallmark Constr.*, 200 F.3d at 1080). The court should evaluate the factual

4

and legal support for the Commissioner's position throughout the entire proceeding. *See Hallmark Constr.*, 200 F.3d at 1080. A court need only make one determination regarding the Commissioner's conduct during the entire civil action. *Jean*, 496 U.S. at 159; *Jackson v. Chater*, 94 F.3d 274, 278 (7th Cir. 1996). "[F]ees may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigation position may have been substantially justified and vice versa." *Marcus*, 17 F.3d at 1036. The court must undertake a global analysis of the government's position because whether that position was substantially justified will rarely be decided by a single issue. *See Hallmark Constr.*, 200 F.3d at 1080.

Although the EAJA does not define "substantial justification," the Supreme Court has defined the term to mean "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also Golembiewski*, 382 F.3d at 724. Expanding on this definition, the United States Court of Appeals for the Seventh Circuit stated, "'Substantially justified' does not mean 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute,' or if reasonable people could differ as to the appropriateness of the contested action." *Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir. 1992) (citing *Pierce*, 487 U.S. at 565). The substantial justification standard is different than the substantial evidence standard, which is used to evaluate the merits of a claimant's request for remand. *See Pierce*, 487 U.S. at 568-69. The Commissioner bears the burden of proof in showing that his litigation position was substantially justified. *See Pierce*, 487 U.S. at 565; *Golembiewski*, 382 F.3d at 724.

As a starting point for analysis, the Court summarizes its January 30, 2009 Opinion and Order. In the Order, the Court remanded this matter for further administrative proceedings, finding that the ALJ failed to properly weigh the medical source opinions, improperly rejected Dr.

5

Rudolph's psychological assessment of Plaintiff and failed to recontact him, failed to consider the impact of Plaintiff's asthma on environmental limitations for his RFC, failed to consider all of Plaintiff's limitations in her RFC finding, failed to properly question the VE as to the consistency of his testimony with the DOT, as required by SSR 00-4p, and failed to submit a complete hypothetical to the VE. Plaintiff's attorney argues that in light of the statutory and regulatory requirements applicable to these issues and relevant Seventh Circuit case law, the Commissioner's position was not substantially justified. In response, the Commissioner argues that the Court affirmed most of the issues appealed by Plaintiff, and that his position was substantially justified since remand was primarily based on the need for further articulation by the ALJ.

*1. Weight Given to Medical Source Opinions*

Plaintiff's attorney contends that the Commissioner is incorrect in arguing that the Court remanded this matter primarily for further articulation. In particular, Plaintiff's attorney argues that the ALJ violated statutory and regulatory authority by giving Dr. Smejkal's opinion, as a non-treating physician, controlling weight.

Under the "treating physician rule" in 20 C.F.R. 404.1527(d)(2), the ALJ is directed to give controlling weight to the medical opinion of a treating physician[3] if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006)). The regulation further provides that "[u]nless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we

---

[3] "A treating source is an individual's own physician, psychologist or other acceptable medical source that has provided that individual 'with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship' with that individual." *Bradley v. Commissioner of Social Security*, 3:07-CV-599 CAN, 2008 WL 5069124, at *4 (N.D. Ind. Nov. 25, 2008) (quoting 20 C.F.R. § 416.902).

6

consider all of the following factors in deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(d). These factors include the examining and treatment relationship between the medical source and the claimant, the frequency of the relationship, the support provided for the opinion, its consistency with the record as a whole, and whether the source is a specialist. *Id.* at (d)(1)-(6).

As noted in the Court's January 30, 2009 Opinion and Order, the ALJ gave Dr. Smejkal's opinion "controlling weight," despite the fact that he was a consultative examiner[4] and a non-treating source.[5] Accordingly, since the regulation only addresses giving controlling weight to a treating source, the Court concluded that the ALJ failed to comply with the regulations by improperly giving Dr. Smejkal's opinion controlling weight. "We cannot deem such disregard for the Commissioner's own guidelines substantially justified." *Wates v. Barnhart*, 288 F. Supp. 2d 947, 952 (E.D. Wis. 2003).

Further, the ALJ failed to evaluate Dr. Smejkal's opinion under the factors set out in (d)(1)-(6). Defendant argued that the ALJ committed harmless error as she intended to give Dr. Smejkal's testimony "greatest weight." Nonetheless, the Court found that the ALJ failed to comply with 404.1527(d)'s factors and failed to fully consider and articulate[6] the weight she gave to Dr. Smejkal's testimony. *See Lucio v. Barnhart*, No. 03 C 7078, 2004 WL 1433637, at *13 (N.D. Ill.

---

[4] Dr. Smejkal only examined Plaintiff at the state agency's request after the December 27, 2005 Hearing, rather than because of an ongoing medical relationship.

[5] "A non-treating source is a physician[,] psychologist or other acceptable medical source who has examined an individual 'but does not have, or did not have, an ongoing relationship' with an individual." *Id.*, 2008 WL 5069124, at *4 (quoting 20 C.F.R. § 416.902).

[6] Further, even in giving Dr. Smejkal's opinion controlling weight, other than stating that she relied on Dr. Smejkal's opinion as it was the most limiting assessment in the record, the ALJ failed to articulate any reasoning behind the weight she gave to his opinion.

7

June 22, 2004). The Court concluded that the ALJ's opinion was devoid of any discussion of the factors in 404.1527(d)(1)-(6) or about giving Dr. Smejkal's opinion "greatest weight" and the ALJ erred by failing to explain the weight she gave to Dr. Smejkal's opinion. *See id.* (finding error where the ALJ failed to explain the weight given to the treating physician's, consultative examiner's, and state agency physician's opinions).

The regulations are concerned with the ALJ providing a trail of analysis that can be traced to explain the ALJ's decision, be it right or wrong. Eliminating any speculation on this point, the first sentence of 20 C.F.R. § 404.1527(d) provides, "Regardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). Here, the ALJ completely failed to follow this mandate as she failed to analyze the weight she gave to Dr. Smejkal's opinion under the factors set forth in 404.1527(d)(1)-(6). The ALJ's failure was not merely an articulation failure, as the Commissioner contends, but it was an analysis failure, which did not allow the Court to follow the ALJ's reasoning and thus prevented the Court from understanding how the ALJ arrived at her conclusions. The ALJ's decision is part of the Commissioner's pre-litigation position. *See Golembiewski*, 382 F.3d at 724 (citing *Sutton v. Chater*, 944, F. Supp. 638, 639 (N.D. Ill. 1996)). Thus, the Court finds that the Commissioner's support of the ALJ's failure is not substantially justified.

*2. ALJ's Rejection of Dr. Rudolph's Psychological Assessment*

Next, Plaintiff's attorney argues that the Commissioner is incorrect in arguing that the Court remanded based on the ALJ's failure to adequately articulate her rationale for rejecting Dr. Rudolph's psychological assessment of Plaintiff and failure to recontact him. Rather, Plaintiff argues that the ALJ's failure was based on legal error.

8

Here, the ALJ gave "little weight" to Dr. Rudolph's assessment because Dr. Rudolph found marked impairments in Plaintiff's ability to understand instructions and interact with others on the basis of Plaintiff's hearing loss, not mental impairments. The ALJ then gave greatest weight to Dr. Marquis' testimony, stating that he reviewed the entire record and helped reconcile any discrepancies in it. However, the Court found that Dr. Marquis' testimony expressed uncertainty as to how Dr. Rudolph arrived at his assessment of marked impairments and resulted in speculation as to the reason why Dr. Rudolph believed that Plaintiff had marked impairments. Further, the Court concluded that no reports or evaluations existed that contradicted Dr. Rudolph's opinion. Instead, the ALJ relied on Dr. Marquis' testimony, which repeatedly demonstrated only uncertainty as to Dr. Rudolph's assessment of Plaintiff's marked impairments, rather than contradicting such testimony.

The ALJ has a duty to fully develop the record. *Luna v. Shalala,* 22 F.3d 687, 692-93 (7th Cir. 1994). The regulations provide that an ALJ will seek additional evidence or clarification from a medical source when the report from that source contains conflict or ambiguities that must be resolved or when the report does not contain all the necessary information. *See* 20 C.F.R. § 404.1512(e)(1). The ALJ's duty to recontact a medical source is only triggered when the evidence received is inadequate to determine whether or not Plaintiff is disabled. *Sharbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Although Dr. Rudolph found marked impairments in Plaintiff's ability to understand instructions and interact with others on the basis of Plaintiff's hearing loss, the Court noted that Dr. Rudolph's accompanying written narrative discussed Plaintiff's mental impairments, indicating that these impairments may have been taken into consideration in determining Plaintiff's limitations. The ALJ then relied on Dr. Marquis' testimony, expressing uncertainty as to how Dr. Rudolph arrived at his assessment of marked impairments, in developing

9

Plaintiff's RFC. Accordingly, the Court concluded that the ALJ erred by giving greatest weight to Dr. Marquis' testimony without recontacting Dr. Rudolph for clarification and the record was inadequate to determine if Plaintiff is disabled. Therefore, by failing to recontact Dr. Rudolph, the ALJ violated 20 C.F.R. § 404.1512(e)(1) and failed to develop the record. Because the ALJ failed to develop the record, by her failure to recontact Dr. Rudolph, the Commissioner's position cannot be considered substantially justified. *See Harris v. Barnhart*, 259 F. Supp. 2d 775, 780 (E.D. Wis. 2003) (finding that Commissioner's position was not substantially justified where ALJ did not develop the record).

*3. ALJ's Failure to Account for Severity of Plaintiff's Asthma*

The Commissioner argues that the Court remanded this matter based on the ALJ's failure to articulate his rationale for resolving inconsistencies in the evidence regarding the environmental limitations posed by Plaintiff's asthma. The ALJ's duty is to resolve inconsistencies in the evidence. *See* SSR 96-8p. The State Agency RFC Assessment provided that Plaintiff's asthma imposed environmental restrictions on the types of jobs he could perform, which directly contradicted Dr. Smejkal's opinion that found no environmental limitations. The Court found that the ALJ was aware of the environmental limitations as Plaintiff testified to them at the Supplemental Hearing, yet the ALJ failed to address them or the conflicting opinions. Therefore, the Court concluded that the ALJ failed to establish a logical bridge between her evidence and the RFC and remand was required. *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

Contrary to the Commissioner's position, these errors are not a failure of articulation, but rather, the ALJ's failure to resolve inconsistencies resulted in failure to build a logical bridge and results in an "RFC finding [that] was fatally flawed because of these omissions by the ALJ." *Young*

*v. Barnhart*, 134 F. App'x 81, 83 (7th Cir. 2005). Therefore, the Court finds that the Commissioner's position was not substantially justified. *Martinez v. Barnhart*, No. 02 C 2354, 2004 WL 2663193, at *1 (N.D. Ill. Feb. 23, 2004) (finding that Commissioner's position was not substantially justified where the ALJ failed to resolve inconsistencies in the record where determining Plaintiff's RFC).

*4. VE questioning and SSR 00-4p*

Plaintiff's attorney argues that the Commissioner's position supporting the ALJ's questioning of the VE as to the consistency of the VE's testimony with the information provided by the Dictionary of Occupational Titles ("DOT") is contrary to the requirements of SSR 00-4p and the Seventh Circuit decision in *Prochaska v. Barnhart*, 454 F.3d 731 (7th Cir. 2006).

Remand in this case was also based on the ALJ's failure to comply with SSR 00-4p's requirements. SSR 00-4p provides that an ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the [DOT] . . ." SSR 00-4p. The DOT is "a standard reference work that is often consulted to determine whether a person with the claimant's [RFC] can perform work available in the national economy." *Morton v. Barnhart*, No. 1:03CV0995-DFH-VSS, 2005 WL 1528242, at *2 (S.D. Ind. June 28, 2005). Here, the VE testified at the hearing only as to an inconsistency between his testimony and the DOT regarding finding sedentary jobs which were only listed in the DOT as light jobs, based on his personal knowledge and discussions with other vocational experts. The VE did not otherwise indicate that his testimony was consistent with the DOT and the ALJ failed to inquire into this. SSR 00-4p was enacted to address the problem in Social Security disability litigation of vocational

experts testifying as to the physical and mental demands of jobs in ways that differ from the DOT. *Morton*, 2005 WL 1528242, at *2.

The Seventh Circuit has opined that sufficient support to justify an adverse award of attorney's fees exists where there is "[s]trong language against the government's position in an opinion discussing the merits of a key issue . . ." *Golembiewski*, 382 F.3d at 724 (citing *Marcus*, 17 F.3d at 1038). The court in *Morton* awarded EAJA fees to plaintiff's counsel, finding that the Commissioner's support of the ALJ's failure to question the VE as to whether his testimony was consistent with the DOT was "a straightforward failure to comply with the specific requirements of SSR 00-4p," and that "the Commissioner's position, both before and during litigation, has not been substantially justified." 2005 WL 1528242, at *2 (citing *Golembiewski*, 382 F.3d at 724). Further, the court's language in the *Prochaska* decision places a clear burden on the ALJ to determine whether the VE's testimony is consistent with the DOT. *See* 454 F.3d at 735. These decisions, combined with the language of SSR 00-4p, provide the strong language required in this Circuit.

Here, the ALJ failed to comply with SSR 00-4p and her failure to do so "produced exactly the sort of remand that SSR was intended to avoid." *Morton*, 2005 WL 1528242, at *2. As such, the Commissioner's position supporting the ALJ's questioning of the VE is without substantial support.

Further, the Court concluded that the ALJ failed to incorporate Plaintiff's postural limitations into her hypothetical posed to the VE. The Commissioner fails to address this matter in his response brief. Accordingly, the Commissioner has failed to show that his position was substantially justified. *Young*, 134 F. App'x at 84 (finding that Commissioner failed to show that her position was

substantially justified where ALJ failed to incorporate all limitations in the hypothetical questions and Commissioner failed to defend these errors in court).

Because the Commissioner's positions on the issues remanded by the Court were without substantial justification, and were contrary to established law, Plaintiff's counsel is entitled to reasonable fees pursuant to the EAJA.

**B. Fees**

Plaintiff's attorney has the burden of proving that the EAJA fees he seeks are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); 28 U.S.C. § 2412(d)(1)(B). "'Hours that are not properly billed to one's client are also not properly billed to one's *adversary* pursuant to statutory authority.'" *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)). As a result, the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. *See Hensley*, 461 U.S. at 437. The amount of a fee award is left to the discretion of the district court because of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id*.

As a preliminary matter, the Commissioner argues that Plaintiff's counsel is not entitled to be compensated at an hourly rate in excess of the $125 limit under the EAJA. The EAJA provides that "fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Although Defendant fails to argue why Plaintiff's counsel is not entitled to a cost of living increase, Plaintiff bears the burden of demonstrating that a cost of living increase is warranted. *Uphill v. Barnhart*, 271 F. Supp. 2d 1086, 1096 (E.D. Wis. 2003). Plaintiff's counsel justifies the increased rate that he

seeks by applying the Bureau of Labor Statistics "all items" Consumer Price Index for All Urban Consumers, calculating the cost of living increase from 1996, when the $125 base rate was set, to July 2008, when most of the legal work was performed by counsel in this matter. *See id.* (providing that the plaintiff justified the increased rate that was sought by applying the Consumer Price Index). The Court finds that a cost of living increase to the statutory $125 hourly rate established in 1996 is reasonable. *See Samuel v. Barnhart*, 316 F. Supp. 2d 768, 780-81 (E.D. Wis. 2004) (recognizing that courts in the Eastern District of Wisconsin have accepted use of the Bureau of Labor Statistics Consumer Price Index to calculate a cost of living increase from March 1996); *Holland v. Barnhart*, No. C 8398, 2004 WL 419871, *1 (N.D. Ill. Feb. 3, 2004) (finding that several courts in the Northern District of Illinois have accepted the use of the Consumer Price Index as a basis for adjusting attorney's fees to correspond with increases in the cost of living) (citing *Baker v. Barnhart*, 2003 WL 22715829, *2 (N.D. Ill. Nov. 17, 2003)). The Commissioner argues that Plaintiff's counsel should have used the Consumer Price Index for Chicago-Gary-Kenosha, rather than the Consumer Price Index for All Urban Consumers, resulting in a $3.87 increase of the hourly rate. Although the Commissioner fails to cite, and the Court is unable to find, case law in this circuit indicating which of the Consumer Price Indexes is more appropriate, the Court will apply the Consumer Price Index for Chicago-Gary-Kenosha to the instant matter. *See Fenn v. Bowen*, No. 85 C 10283, 1988 WL 124137, at *4 (N.D. Ill. Nov. 15, 1988) (providing that "as a matter of course the fee should reflect the cost of living increase based on the Consumer Price Index *in the area* and at the time the attorney represents the plaintiff"). Accordingly, Plaintiff's counsel is entitled to an hourly rate of $172.38.[7]

---

[7] In his reply brief, Plaintiff represents that if the Court determines that the Chicago-Gary-Kenosha index is appropriate, he does not object to the hourly rate calculated by the Commissioner.

The Commissioner next argues that Plaintiff should not be entitled to fees for requesting extensions of time in the instant matter. The Commissioner argues that he should not be penalized for Plaintiff's inability to file briefs on time, relying on *Burr v. Bowen*, 728 F. Supp. 1285, 1290 (N.D. Ill. 1992). In *Burr*, the Court excised 2.81 hours spent by counsel obtaining extensions of time because counsel there did not address the reasonableness of the time spent by counsel in obtaining extensions of time. *Id.* Here, Plaintiff seeks 1.6 hours of fees associated with requesting two extensions of time for filing the opening brief and reply brief and argues that these requests for extensions of time were reasonably necessary. "Extensions of time are regularly requested and granted in social security cases . . . in favor of both the Commissioner and the plaintiff-claimant." *Samuel*, 316 F. Supp. 2d at 779-80. Further, the record supports that the Commissioner requested an extension of time to respond to the Plaintiff's opening brief and did not object to Plaintiff's requested extensions at the time they were made, instead raising this argument for the first time in response to the instant Motion. Accordingly, the Court finds that Plaintiff's request for fees associated with requesting extensions of time is reasonable.

Next, the Commissioner objects to six billing entries[8] totaling 2.2 hours, arguing that Plaintiff seeks compensation for clerical tasks. In the Seventh Circuit, several courts considering the issue have found that a prevailing attorney is not entitled to collect statutory attorney's fees for time spent on clerical tasks. *See Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999) (quoting *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995)) (analyzing fees awarded pursuant to the Fair Labor Standards Act's provision for awarding attorney's fees, the court

---

[8] In particular, the Commissioner objects to billing entries for March 13, 2008 (totaling .7 hours), March 19, 2008 (totaling .2 hours), two entries for March 20, 2008 (totaling .2 hours), March 24, 2008 (totaling .1 hours), and February 16, 2009 (totaling 1.0 hours).

found that hours spent by counsel "on tasks that are easily delegable to non-professional assistance" should be disallowed); *Seamon v. Barnhart*, No. 05-C-0013, 2006 WL 517631, at *7 (W.D. Wis. Feb. 23, 2006) (in a social security case analyzing the award of attorney's fees pursuant to the EAJA, the court found that the prevailing plaintiff's attorney was not entitled to fees for clerical tasks such as reviewing service of summonses and sending proof of service to the court). Plaintiff agrees that two of the billing entries,[9] totaling .3 hours,[10] are clerical time and not properly billable under the EAJA.

Next, Plaintiff argues that the fees sought for the March 13, 2008 billing entry are not for clerical tasks. The March 13, 2008 billing entry contains the following description: "Draft Complaint, Summons, Appearance, Civil Cover Sheet." Pl.'s Br., Ex. 3. Plaintiff argues that these tasks are not clerical and are reasonably compensated at the requested paralegal/legal assistant rate. The Court agrees that the billing entry demonstrates that the types of tasks performed were not clerical in nature. Rather, these are the types of tasks normally conducted by paralegals, including preparing and submitting court documents and serving process, and Plaintiff's counsel may recover these costs. *Holland*, 2004 WL 419871 at *2.

Further, Plaintiff argues that the fees associated with the March 19, 2008 billing entry are recoverable as non-clerical tasks because the tasks included contacting the client for information. "Attorneys have responsibilities to the court and to their clients, and they are entitled to charge for

---

[9] Particularly, the entries for March 20, 2008 and March 24, 2008.

[10] In his reply brief, Plaintiff represents that the log entries for March 20, 2008 and March 24, 2008, total .2 hours. However, the Court's review of Plaintiff's itemization reveals that the time from these two entries totals .3 hours, not .2.

their time reasonably spent on communications with the court and their clients." *Newman v. Apfel*, No. IP 98-869-C-H/G, 2000 WL 682663, at *3 (S.D. Ind. April 20, 2000). Here, Plaintiff's counsel billed a short increment (0.2 hours) of time for this activity and the Court finds that this amount of time is reasonable. Accordingly, the Court finds that Plaintiff's counsel is entitled to the amount requested.

Plaintiff also argues that the February 16, 2009 billing entry, seeking to recover fees for preparation of the itemization of time, is also properly recoverable as legal assistant/paralegal time. Plaintiff represents that the staff member who prepared the itemization of time reviews the itemizations and removes time for mailing documents to clients, filing documents with the courts, and adds up the time in the itemization and calculates the appropriate cost of living adjustment. Defendants fail to address how this constitutes clerical work. In addition to obtaining litigation fees and costs, a plaintiff is also entitled to the reasonable fees incurred in preparing the EAJA petition itself. *Embry v. Barnhart*, No. 02 C 3821, 2003 WL 22478769, at *1 (N.D. Ill. Oct. 31, 2003). Under the EAJA, a plaintiff's counsel must submit an itemized statement of the time expended on a case and the hourly rates on which the total fee calculation is based. *Bailey v. Barnhart*, 473 F. Supp. 2d 842, 852 (N.D. Ill. 2006). Given that Plaintiff seeks to recover fees associated with preparing the itemization of time, as required by the EAJA–a cost incurred in preparing the EAJA petition–the Court concludes that this is not clerical time and is appropriately recoverable at the legal assistant/paralegal rate.

The Commissioner further argues that Plaintiff should not be reimbursed for time billed by two attorneys for the same conference and that there is no justification for staffing two attorneys on this matter. In support of this argument, the Commissioner cites *Lopez v. Shalala*, Nos. 89 C 6482,

17

90 C 392, 1994 WL 478547, at *10 (N.D. Ill. Aug. 31, 1994). In *Lopez*, the court scrutinized the plaintiff's fee application for duplicative time. The application contained billing for numerous meetings between a senior partner at the law firm representing the plaintiff and two junior associates. The senior partner billed for his time spent at each of these meetings but the junior associates did not. The court found this practice quite reasonable. *See id.* In addition, the junior associates met with a paralegal twenty-four times to discuss the case. On twenty occasions, only one of the individuals billed their time. The court concluded that the four instances in which multiple persons billed their time did not constitute over billing in light of the twenty other occasions of single billing. *See id.*

Here, Plaintiff's counsel represents that, as senior counsel, he develops the theory of the claim and then provides a memorandum to the file for an associate attorney, Ms. Kobayashi, to use in drafting the opening brief. Plaintiff's counsel then reviews and edits the drafts of the briefs and holds a brief conference with Ms. Kobayashi to discuss edits, facts, and other issues that need to be addressed. Here, Plaintiff's counsel billed 1.0 hour for the conference time and Ms. Kobayashi billed a total of 3.0 hours for the conference time and time required for finishing her reply brief. Plaintiff's counsel argues that because both attorneys were working on the case at that time, the time for both should be compensable. The Court finds the meeting to be analogous to the meetings in *Lopez*, where a senior attorney met with a junior associate(s). However, here, unlike *Lopez*, both attorneys billed for the meeting. The description of Attorney Schultz's time in the meeting is as follows: "Conference with [Ms. Kobayashi] regarding reply brief." Pl.'s Br., Ex. 3. Based on the description of the work done at this meeting, it appears that Attorney Schultz used the meeting to give guidance to the less experienced Attorney Kobayashi. The Court finds that awarding fees to

18

both attorneys for time spent by one attorney instructing the other is excessive. As a result, the Court finds that only Attorney Schultz should be awarded fees for the time spent in the meeting and the Court reduces the Plaintiff's billing statement by 1.0 hour of attorney work, which was the time billed by Attorney Kobayashi for the meeting.

Accordingly, the Court finds that Plaintiff's request for fees and costs is reasonable. After adjusting the requested fees, the fees total $10,026.87.[11]

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the Plaintiff's Motion for Attorney's Fees Under the Equal Access to Justice Act and for Entry of Final Judgement (sic) Order [DE 27] **but with relief different than that requested**. The Court awards the Plaintiff a total of $10,026.87 in attorneys' fees. The Court further **ORDERS** that the payment in the amount of $10,026.87 be made directly to Barry A. Schultz, in accordance with the Retainer and Fee Agreement for Federal Court Representation signed by the Plaintiff.

SO ORDERED this 12th day of June, 2009.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY

---

[11] The Court deducted .3 hours for the agreed deduction of the March 20, 2008 and March 24, 2008 entries. Further, in its reply brief, Plaintiff agrees that the amount of paralegal time should be decreased by .2 hours due to a calculation error. Additionally, the Court deducted 1.0 hour of attorney time for Ms. Kobayashi's billed time for the November 25, 2008 conference with Mr. Schultz. The Court also added 3.5 hours of attorney time, reflecting the amount of time spend by Plaintiff's counsel in preparing the reply brief.

Based on these deductions, the Court calculated the following figures: Attorneys time: 55.2 hours (adjusted to include the time spent in preparing the reply brief and time deducted for the double attorney conference) X $172.38 (the adjusted fee rate) = $9,515.37; Legal Assistant Time: 1.9 hours (reflecting deductions for clerical time and calculation errors) X $85 = $161.50. $9,515.37 + $161.50 + $350.00 (filing fee) = $10,026.87.

cc: All counsel of record.